May it please the Court, my name is Ernest Bustos and I'm here in representing the group of intervener defendants. May it please the Court that I'm here on the behalf of the sales agents and the sales brokers that sold programs through Strategic Partners Alliance, referred to SPA. We did not, as the appellee would suggest, participate in the scheme. Could you help me with a kind of predecessor question? The money that's at stake, the salesman's commission, did it ever get into the custody of the court by deposit into the registry? No. Does the court in any way possess the race, the RES race? I'm not aware of that. Is there any way that the court could be said to be in custody of the money that was paid to the salesman and commissions? No. How did the commissions work? When you as the salesman for Alpha made a sale, what happened? Well, first of all, we were not salesmen for Alpha. We were salesmen for Strategic Partners Alliance that had a contract with American Telecommunications, a Nevada-based company. We sold the phones, sent the sales transaction to SPA, and SPA then transacted the sale with American Telecommunications. Then they placed the sale with Alpha Telecom. And then who paid you your commissions? Strategic Partners Alliance, if I'm not mistaken. SPA. Well, the money was coming from, your commissions were being, you were getting a check cut by SPA? It's my understanding, yes. The sales were transacted to SPA. Mr. Bruce, I have sort of a general question I guess I'm trying to address, and that is this. What process have you not been afforded in this? What is it that you want out of all of this? Due process, Your Honor. We have never been able to address the securities issue and whether or not it was a security. Now, that question has been resolved by our court. Isn't that right? That question has been resolved as far as it concerns Ribera, but not the agents. There's an issue that has never been addressed by the court, and that's common enterprise. That was conceded by Ribera. But the question as to whether Alpha was selling securities subject to the securities laws has now been resolved, and we're not going to revisit that. That's the issue here, Your Honor. It has not been resolved. Recently, the United States Tax Court ruled that the pay phone title, legal title, had transferred to the pay phone owners. That makes it a personal transaction. And if it's a personal transaction, it can't be a security. You're suggesting there's a conflict between our decision in Ribera and the tax court? Yes, sir. Okay. But how can we resolve that? By allowing the to address the common enterprise issue. Well, yeah, but we understand we're a three-judge panel. We have another three-judge panel that's already said in Ribera that this is a security. We do not have the power to overrule the other panel. Then we have to move it to the Supreme Court because we have a We're in the wrong place. I understand that, but that's what we're claiming. We're claiming we were not given due process. It is a security. Suppose we treat that as established and that the salesmen are precluded from contending otherwise. Do you then lose? Is it all over? No, sir. We believe that this court found, in fact, if you'll give me a second, I'll find it. This court found in another case, in Honolulu Joint Acceptanceship and the United States Association of Local Unions, number 675 versus Foster, in quoting the Supreme Court, ill-gotten gains as money obtained through fraud or wrongdoing. The agents have never been convicted of wrongdoing. In fact, the judge found that there was no wrongdoing. What the judge said is he said, no wrongdoing is established against the salesmen, but they are guarantors that what they sell as a security is not a prohibited sale of a security. It was a prohibited sale of a security, even though they didn't do anything fraudulent or otherwise wrong. So as guarantors with strict liability, they're not entitled to commissions for selling it. That's how we distinguished it from, say, the Domino's Pizza that delivers pizza to the office. The problem is that this court has found that ill-gotten gains is obtained through fraud or wrongdoing. How do we overcome that? Well, he said it didn't have to be ill-gotten gains. I understand that, but we believe he erred in that judgment. Well, could you tell me what authority there is that says he's wrong about the salesmen being guarantors? I don't think that he referred to any law that says that the salesmen are guarantors. No, I'm asking you to refer to law. You didn't give a citation. I'm asking you to refer to law. The Securities and Exchange Commission has a history of imposing ill-gotten gains, a disgorgement action against people who were not involved in a transaction and had no intent. The strict liability, I believe, is a violation of due process. It is a constitutional issue. In fact, when we hired counsel here in Oregon, the first thing that counsel said was that she believed that due process had been violated, then came back and said that her law firm would not allow her to address that because they dealt in receiverships. That could not be used by this panel in writing a decision. I understand that, sir. We can't cite what this person said. Can you give us something to cite? Every case, including the Securities and Exchange case cited by the appellees, Corrello, every case has to do with fraud and disgorgement. There has been no fraud in this case. The agents were victims also. They bought pay phones. In one case, one agent bought over $600,000 in pay phones herself, you know, to say that the agents are going to be held to a standard of which the law does not allow based on fraud or wrongdoing. Let's say we – I think you're right that the cases for disgorgement have got that says without fraud, there can't be disgorgement. The salesman is just like the grocer who sold the groceries to these guys. I believe that this court – I believe in this court in Honolulu Joint Acceptance and Training Commission quoted the Supreme Court as defined ill-gotten gains as money obtained from fraud or wrongdoing. It seems like that the ruling is just opposed to the Supreme Court. Counsel, you're – I understand that you'd like to challenge our decision in Rivera. I'm just wondering whether you have to go that far. Assuming that these were securities, why isn't your argument that you've added value or that you've – that the salespeople operated in good faith and, therefore, this is not money belonging to the company, that this is – Well, Your Honor, the agents did act in good faith. The agents went out and did their due diligence. There were court cases already decided that Alpha was not a security in different states, and the court ruled that they needed to return – the bankruptcy court ruled that they needed to return the pay phones, and the receiver refused to do it. The agents and the investor owners, their issues were intertwined. They owned phones. They tried to recoup their phones, and yet the receiver and its attorneys refused to return the phones even after they had been ordered to do so by bankruptcy. We walked into bankruptcy with a company ready to take on the responsibilities of the pay phones, and the receiver and his attorneys, along with the Securities and Exchange Commission, refused to do so. They refused to litigate on whether or not the phones illegally had transferred. We took that issue to the – to the tax court. The tax court has now ruled that, indeed, the legal title appears to have transferred. Judge Panner, in his latest opinion, admonished the receiver and his actions in handling Alpha and reduced their fees by some $900,000. There are a lot of issues in this case that have not been addressed. I'm just curious about something that doesn't go to the issues. The parties are kind of complicated. Are you the pro se? Yes, sir. Counsel, how were you notified about this lawsuit? Many agents were sent just regular mail. It wasn't certified. And there's no evidence that the receiver can prove that they actually received notice. Were they served with a complaint or just a letter? No. There was no complaint filed. You know, they, in essence, were addressed as de facto class action defendants. Are you part of the group that intervened? Yes. Now, by intervening, have you consented to the jurisdiction of the receiver? No. We had a special occurrence. Back on the question of whether or not this is a securities fraud action, it seems to me the Vigman case is applicable to primary securities fraud actions. You're bringing an action, the action brought here is for unjust enrichment that seems to be ancillary to the securities action against Rubiro. So correct me if I'm wrong. It seemed to me we're not addressing the question presented in Vigman of the power of the district court to hear a securities action brought by the SEC, but instead the power of the receiver, an appointment court, an ancillary proceeding to recover funds from persons allegedly unjustly enriched. Is that correct? I'm not prepared to answer that question. I can brief it for you if you'd like. All right. But I can tell you that what the judge said, that the agents were nominal defendants. And under the definition of nominal defendants, those are people who don't have a stake in the claim. Clearly, the agents had a stake in the claim of the commissions. And therefore are not nominal defendants. And not nominal defendants, correct? Okay. Has there ever been any process to determine whether the salesmen were unjustly enriched, or was there just a legal conclusion based on the improper sale of a security? I think it's just the conclusion on a legal theory. In all reality, the salespeople who were able to respond, out of 165, only 65 responded. So we only have to assume that the other 100 never received notice or failed to respond. There's no way of telling because it was not done by certified mail. I can tell you that the agents have acted in a good fashion. A number of reasons. I mean, if their commissions were $2,200 and the lawyer told them it will cost you a $5,000 retainer to have me take this on, they might decide it makes no sense for me to deal with this. Well, the receiver used his discretion in only going after agents that made $25,000 or more, which seems contrary to the statement, the broad statement, that no one could retain ill-gotten gains. It doesn't matter if they made a penny. They should have gone after all of them. That's selective prosecution. You might want to reserve some time. Reserve? Thank you. Thank you. May it please the Court, my name is David Zorro, and I'm an attorney representing Thomas Lennon, the receiver appointed in the Alpatelcom case. Are you reserving any time for the other people? Yes, and I'm going to reserve time, five minutes, for Chris Pack from the Securities and Exchange Commission. Would the clerk make it 15 and five? I've got a problem, and it may be a problem of understanding of your case. Okay. There's no race in the possession of the court, so the court can't exercise equitable power over the race. The theory is the salesmen have property, which is currently they have title to it, money, and undoubtedly it's been commingled and spent to a considerable degree, and you're suing them for money. It's basically a damages case. The theory, since there's no contract to recover the money, is restitution, unjust enrichment. That's a restitution theory, quasi-contract, to sue somebody for money damages. I don't quite see how you can do it without suing them. It seems like you give them a summons, a complaint. They have a right to jury trial under the Seventh Amendment. They just get sued, and maybe they win because there's no unjust enrichment. Maybe they lose because of the district court's theory that they sold something that was not marketable. I don't know. I don't get it, how you can sue people for money without suing them. I don't think this is necessarily a novel situation. The court in Wenke and Colello and a whole series of cases where the court has used its productable powers to enforce a disgorgement. What do you mean by equitable powers? It sounds to me like a traditional common law suit for money damages. Well, the money that is being held, the theory behind this is that the money that was received by these salespeople, which amounted to about $39 million, 25% of the value of sales, was flowed through the company. That is, each salesperson made a sale. The cash came to Alpha Telecom or one of its affiliated entities, all of which were part of this receivership. That money, the commissions, were then paid to each salesperson, 25% of each sale. As such, that money is, we believe, property of the receivership estate. It seems to me like just making it up. I mean, it's not property of the receiver. Legal title is in the salesman. What you have to prove is you're entitled to it. It's not a sham. It's not an alter ego. It's not putting the Alpha Telecom money in the Beta Telecom bank account just to hide it from the Alpha Telecom creditors. It seems like no matter how many times you say it's virtually our money, it isn't. It's somebody else's money, and you have to get it because you're entitled to it and they're not. Well, this is no different than ill-gotten gains in any other matter where someone is holding money that is not there. And while we don't have to prove constructive trust, that is, I don't think the courts require us to prove it. It's different from you hire me to paint your house and you give me the $5,000 now. It's going to be $5,000 when I finish. You give me the $5,000 now, and I never do a thing toward painting your house. So you sue me for the $5,000 back. It was ill-gotten gains, unjust enrichment, but you still have to sue me to get your $5,000 back. It may be ill-gotten gains, but you painting my house wasn't an illegal endeavor. In this instance, the salespeople for each sale was an illegal sale. They sold each sale, violated the securities laws. Let's say it was. It wasn't to paint your house. It was to provide you with 400 cases of beer for your restaurant, but I don't have a proper license. You still have to sue me to get your money back. I think that's right. I think we did sue them in this case to get the money back. To go to that issue. You didn't sue them. You didn't send them to someone to complain. Well, I think the distinction – well, I think in this instance you're suggesting that a plenary procedure is necessary over the summary procedures that are – were used in this case. I don't know what a plenary procedure is. I'm familiar with lawsuits. Lawsuits. We'll go with that. Lawsuits, I don't believe that there's – there is no difference between what took place in this instance and what took place in a serving of a lawsuit. The only distinction is the physical existence of a summons. In fact, in this instance, the – each sales agent was served. Each sales agent had a total of almost nine months to respond. Summons and complaint, that's the difference. Well, they received a – They were served with what? They were served with a motion, a declaration of – To what? A motion to – the motion sought to do two things. The motion sought to disgorge as unjust enrichment the commissions that each salesperson received. In addition, the motion sought a – the motion was for a fraudulent conveyance.  Let's stop. Let's start with the motion to disgorge. This is a motion to disgorge that's being filed in court, and we're simply serving them to let them know that we're attaching – that we're going to seek their property? We are suing them and saying, we think that you were unjustly enriched by receiving. Were they named in the motion? Each and every salesperson was named – was served with a – yes, and was effectively named. The motion is not effectively – Summons and complaint. Well, I'm not sure if I actually have a – we didn't issue a summons for this. We attached to this the identity of each salesperson, the amount of the specific commissions they received, and identified in that motion that we wanted each person to return that money to us. Now, this is not the first they'd heard from us. But the motion is to be filed with the court, right? Right. We file motions in court. We don't file motions to – we can serve parties with motions, but the motion is one that was going to be filed in court. And if they didn't respond, then what happens? End up with a default judgment? Well, in this instance, we can grant the motion without ever having served them a complaint, a summons, and brought them into the lawsuit like we bring everybody else into a lawsuit. This – the Ninth Circuit, in numerous cases, Wenke and other cases like Wenke, has allowed receivers in this position to take the – We have a nominal defendant. As we defined in Colello, nominal defendant in the classical case is either a bank account or a trustee. Well, the defendant in Colello was neither of those. Defendant in Colello – We had a Fifth Amendment problem in Colello. We did. But Colello – the position in Colello, the person was simply a person who stated that he provided services. And through the summary – through that case, we – the court – this court concluded that it was appropriate to disgorge the fees from him, as in this case. This case is no different. The suggestion – Except that all the – all the inferences were drawn against the defendant in that case because he pled the Fifth. We don't have a Fifth Amendment issue in this case, I don't believe. There's no question about that. However, the court didn't – the court, while it stated that that was the point, the court also stated – indicated that it wasn't necessary, that, in fact, it could – those – they could – the pursuit of a disgorgement amount was premised not on proof of underlying fraud, which, of course, the SEC had failed to accomplish in that case. It was simply that he held that money without any right to it. In this instance, that is what we're claiming here, and we're using the procedures that the Ninth Circuit suggested that we could use. The concern, I understand, is rather than just going after one or two people, in this instance, we had 160 people that made over $25,000 in commissions. For the receiver, as a practical matter, in an equitable receivership which has very little proceeds, there is – it was wholly impractical for the receiver to prepare a complaint and serve by personal service and institute a formal lawsuit against each and every one of these – these agents. So – What about the agents who bought some of this themselves? They – they were entitled to offset that amount from the amount of the commissions. If you look at the record in this case, you will see that the receiver took every step and the entertainer took every step in order to make sure that these – these agents only returned the profits, essentially, that they gained from – from this action, to the extent that the Court set off the amount that – a uniform amount based on percentages to accommodate whatever business expenses that they may have paid to operate their sales business. The Court set off any amounts that they paid in state court actions by investors who sued them. The Court set off from the amount of the commissions any amounts – any amounts that were attributed to pay phones that they individually bought for themselves. That still left $17 million or so of commissions that were earned as profits from this. Yes, we did not file a complaint. But as in Wenke and other cases, where you have – it was wholly impractical, so to – the receiver is left with two choices. Either simply allow the – this profit, these ill-gotten gains, to remain in the hands of the defendants, or to take the action that we did, which was a nine-month process in which each sales agent received the entirety of a motion, was provided an opportunity to respond. You know, I think we have a published decision that says it doesn't matter if people know the case is going on. They've got to get sued. I think I wrote it. I can't remember the name of it right now. I apologize. I don't know what that case is. Let me ask you something about Colello. Yes. Colello says that a nominal defendant is a person who holds the subject matter of the case as to which there is no dispute. The SEC may name a non-party depository as a nominal defendant to effect full relief in the marshalling of assets that are the fruit of the underlying fraud. As I understand the theory of your case and of the district court's judgment, that's what the salesmen are here. Am I right so far? Yes, you are. Okay. Then Colello goes on to say the standard nominal defendant is a bank or trustee which has only a custodial claim to the party. Colello says he is not such a person. He provided services. And they say his claims are not without substance. In the typical case, the creditor plaintiff, that's you, must show that the nominal defendant, that's the salesman, has received ill-gotten gains and that he does not have a legitimate claim to the funds. We disagree with the SEC's attempt to characterize the claim as an affirmative defense. This case, however, is atypical because Colello has consistently invoked his Fifth Amendment privilege not to testify. Yes. So basically, as I understand that case, they treat Colello as a depository, just like a bank that had Alpha Telecom's money. And the reason they do that is that even though he says he provided services, he won't testify. The salesmen have not invoked the Fifth Amendment, so it seems like they would fall within the general rule of Colello rather than this special circumstance where the person who claims to have provided services won't testify. I don't read Colello as suggesting that, nor the other cases that we've cited in our brief, including the Sheriff case and TLC and the others, as requiring that the state, that the receiver or the SEC establish that it is actually that they were intimately involved in the underlying fraud transaction. Is there – I'm sorry. I think you concede, don't you, that if Domino's delivered pizza to Alpha Telecom when they were working late at night, you couldn't get the money for the pizza back from Domino's? Absolutely. And just as Judge Panner said in his opinion. You do concede that? Yes. Now, the difference between the Domino's pizza and the salesmen's commissions, they also worked for it. The difference is that this was not a marketable security that they were selling and getting the commissions for. Is that right? Right. That's a fundamental point. Now, what – that was the critical point in the district court's decision. I don't recall a citation of authority for that point. What is the authority? Well – What case do you have where the salesman's – the innocent salesman's commissions get disgorged because it's not treated as providing services? Well, I think that – let me just – sorry. There they are. These salesmen are presumed innocent of wrongdoing, according to the district court's decision. So I need authority that says the innocent salesman's commissions – It's the – the site, I would say, would be SEC v. Calvo, C-A-L-V-O, 378 Bedford, 1211. It's a 2004 opinion out of the 11th Circuit. And Mr. Pack can address the facts, but unfortunately, I don't have them at my fingertips. I think that the issue is also – that issue is also addressed in – I apologize. If that's the case in the council, this would be a – this is a question of first impression in the circuit. I don't believe so. I think that this case is – Well, if the only authority you've got is the 11th Circuit, this would be a question of – No, I understand that. I'm trying to – just give me one second. I just want to see if I can find – Was that case cited in your briefs? I don't believe so, no. Well, that would have to be submitted to the court then through the clerk. Thank you. Yes, ma'am. The – The clerk has sticky forms that you can fill out. Okay. And if you're – if I could reserve just 25 seconds to look through my notes while counsel is doing it, maybe I can find some other sites. We'll do that. Rather than trying to fumble away here. You can just hand your site to the SEC's attorney when you find it and he can give it to us. Good morning. My name is Christopher Pack, and I represent the Securities and Exchange Commission in this matter. The Palvo case, which was just discussed, is a recent decision of the 11th Circuit. That case stands for the proposition that the sale of unregistered securities is a strict liability offense, as Judge Panner said in this case. It doesn't specifically address the question of salesmen's commissions. Factually, it's not completely on point. Strict liability is great, but you've got to figure out how far does the strict liability apply. It probably applies to Mr. Rivera and perhaps to other leaders of Alpha. Does it apply to all of the salesmen who have – I would submit under the authority of Palvo, yes. Because what Palvo says is it's the enter, which is an element that the commission or a private plaintiff must prove where there's an allegation of securities fraud. That element is not necessary where the commission brings a case for the sale of unregistered securities. I don't understand how that helps you. Sale of a defective product is a strict liability offense. No fault need be shown. But in order to recover from a manufacturer for sale of a defective product, the plaintiff still has to sue them, and the manufacturer still gets a right to jury trial. Well, I think that issue, whether the salesmen should have been made nominal defendants or relief defendants, that's not the issue. The issue is whether they needed to be real defendants, not – or even – A nominal defendant is ordinarily an alter ego or a depository. I guess one procedure the commission often uses when it's going to hear what the commission does, because we have authority to decide what the law is, even if the commission does something that we think is unlawful as a routine matter. I understand often the commission will sue individuals as relief defendants, alleging that these persons may not have violated the securities laws themselves, but that they are holding ill-gotten gains. The proceeds of unregistered sales of securities or fraud. You're talking past each other. My problem is not whether you may be entitled to the money. My problem is whether you have to sue to get it. Well, what I'm trying to say is the commission often does sue people like the salesmen. You serve them with a summons and a complaint. Yes. They're made official defendants. Why didn't you do that in this case? It looks like the commission wants to – all the benefits of having a nominal defendant without any of the burdens. Well, in this case, the receiver took the labor of ore, if you will. The commission's resources are limited, and the receiver proceeded against the salesman with the commission trailing along behind. And the point I want to make – Are you telling us that you disagree with the way the receiver handled it here? No, no. We joined in the receiver's motion. We completely disagree. I'm just trying to set this in context. The commission often makes people like the salesman real defendants. They're called belief defendants because they're not accused of violating the securities laws. A real defendant, when he's sued for money, gets a summons and a complaint and a right to jury trial. That's right. Now, the thing is, there is a decision in this surrogate, SEC v. Wenke, from 1986, and it's cited in the briefs. And in that case, the person who was the subject of the disgorgement order – What case are you talking about? I'm sorry. SEC v. Wenke, W-E-N-C-K-E. Yes, I have it. From 1986? Yes. 832. It's cited 783, F second, 829. The jump site is 832. In that case, the subject of the disgorgement order was not a defendant in the underlying action. And I would submit that the action taken by the receiver in this case is fully covered by that precedent. Well, that's fine if you have a nominal defendant. But you don't have nominal defendants here. You have treated them as nominal defendants. But my question is, the person who was the subject of the disgorgement order in the Wenke case wasn't a defendant either. It wasn't a nominal defendant. The Wenke case is different from the Colella case. In the Colella case, yes, the subject of the disgorgement order was a nominal defendant. In the Wenke case, the person wasn't a defendant at all. And so what I'm saying is that under the authority of Wenke, the receiver's action was completely justified. I also want to place – The issue was raised in Wenke. Pardon me? It doesn't look as though the issue was raised in Wenke of whether a salesman who received a commission is entitled to a summons and complaint and a right to jury trial in a suit for money. I mean, that – the issue may not have been – might not have been fully discussed. Nonetheless, the facts of the case are that there was – It wasn't raised. No, I – So there's no holding. No, I don't believe it was. But the fact that – Well, if it's not raised, then there's no holding. What do I care if there's some parallelism in the facts? Well, I think it's instructive that the Court in the Wenke decision was not bothered by the – even if the parties – whether the parties weighed – I know if they were bothered. If it's not raised, then whether you're bothered or not, it's not part of the decision. I would simply submit that this is the decision of this Court and that the receiver – Do you have a case where a court has held that you can avoid summons and complaint and a right to jury trial, but can still collect money from third parties who are not depositories or otherwise nominal defendants? I'm afraid that the Wenke case is our best authority. The best authority that I'm aware of on that point. Okay. I'm reading from Wenke here on page 836. They say, We indicated that to determine the adequacy of a summary proceeding in a given case, courts must focus not on the form of the proceedings but on their substance. We did not accept the contention that the lack of a formal complaint and answer prevented the district court from exercising its jurisdiction and resolving the suit because the parties – and this to me is key – of notice concerning the nature of the proceedings were permitted extensive discovery, including the taking of depositions, and were permitted to file briefs and exhibits with the district court, and because except for dispensing with the filing of a complaint and answer, the district court applied the federal rules of civil procedure and so forth. None of that applied in this case. Well, no, no. Indeed, the parties were given complete opportunity. There's no – the appellant in this case does not deny that he found out about the pending motion. He doesn't deny that he was given a chance to appear in the district court and to make any arguments that he wished. In fact, I believe there was a nine-month period. The parties subject to the discretion were even given an opportunity to take discovery. It turned out that there were very few factual issues at stake, mostly legal issues. I don't believe they availed themselves of that proper opportunity. But they had notice, a chance to appear, a chance to raise issues, a chance to take discovery. Well, but they came in under a special appearance, which meant that they challenged the personal jurisdiction of the court, or the court's jurisdiction over them. And they later attempted to – they later attempted to intervene. In fact, were permitted to intervene. So what the receiver did here was pattern on the language that you just quoted from Wenke, where this Court said it's the substance that counts. You have to make sure that people have notice and opportunity to participate. And the receiver and the district court and the commission made sure in this case, these salesmen, in particular the appellant in this case, knew about the motion that he had his day in court, in the district court, and that – so that he would no – have no cause to complain at any point in the future that he'd been denied due process. I mean, what do you do? It looks like a suit for money damages under quasi-contract theory, restatement of restitution. What do you do about the rights of jury trial? I don't think – I think – I disagree with your characterization of this as a suit for money damages, because what we have here are assets that belong to the receivership entities. They don't belong to the receivership entities. Well, excuse me. When a check is written from Alpha Telecom to this intermediary, I can't remember which, and the intermediary writes a check to the salesman, and the salesman deposits it in the bank. The salesman had title to the money, and then he gave the bank title to the money, and he has ownership of a debt from the bank to him. I would submit to you, Your Honor, that disgorgement is an equitable remedy. And as such, the roots of it go back – Well, it doesn't mean all bets are off, though. No, no. It certainly does not. But equity has, for hundreds of years, has been applied to situations where formal title may have been passed from one party to another, but the party who has received formal title is treated, say, as a constructive trustee. Yes. That happens all the time in alter ego cases, fraudulent transfer cases, that sort of thing. But here, we proceed on the assumption that the district court said was his assumption that the salesmen are innocent of wrongdoing. But – And there's not even a suggestion that they're depositories or alter egos or merely holding the money as custodian. But I would – I would submit that they are a species of custodian because they took this money for no good and valid consideration, in distinction to the case of the Domino Pizza salesman. They received these funds – What about my unlicensed beer distributor? Could you get the money back from him without having to sue him? That would be, obviously, a case between the two. But certainly, there's a possibility that you could say that someone was distributing or say – say someone took money for the sale of drugs. That's different because it's contraband. Well, we would say the difference between contraband and maybe liquor, which is permissible under – when you're properly licensed. And here, you have unregistered securities, which are also not quite contraband, but it's something – they're something that are not supposed to be sold. They're not kosher, but they're not contraband. Right. Now, it's a violation of – it's a violation of the law to sell these things. And as I pointed out earlier, there's no requirement that the Commission show that someone acted knowingly or with stance when they sell these things in order to violate the law. What I'm saying is these people violated the law, and they got paid for it. And we are not seeking a finding that they violated the law or an injunction against them. All we're saying is that they shouldn't be allowed to keep money that they got for illegally selling these things. Now, they've contended, well, they weren't really securities, so it was legal for us to sell them, but I don't think that's an issue for this Court today. That would be their only possible defense. They could say, well, these, in fact, were not securities, therefore they don't fall within the ambit of the federal securities laws. If that argument could successfully be made, then you'd have a different situation. But we're talking about funds that were obtained through violations of the federal securities laws. And I think in equity, when you're looking – on the one hand, you have the salesmen who obtained these monies through illegal sales. On the other hand, you have the investors who lost money, who were – because they bought unregistered securities. I think equity demands that the investors be given the money, that they have a superior claim. Counsel, the service of a summons and a complaint is ordinarily the court's assertion of in personam jurisdiction over the defendant. Since there was no summons and complaint, we only had a – we only had a motion. What's the basis for the exercise of in personam jurisdiction here? Well, the exercise is over the – If the answer is that the exercise is over the money, then that's quasi in ram jurisdiction. Yes. And that would be – that would ordinarily be setting aside sort of the problems of Schaefer versus McNair. But if we're going to say that we're exercising jurisdiction over the property and not over the person, then you've got to be able to tell me where the property is. But you didn't – you didn't attach the property. You didn't attach bank accounts or cards or vacation bonds. I think there are two answers to your question. The first answer is Wenke because the subject of the discretion order in Wenke wasn't given a summons and complaint. The second answer, perhaps even more pertinent, is that these people intervened. So they've consented to jurisdiction. So they've consented to jurisdiction. I thought they made a special appearance and made clear their objection to jurisdiction. That was at an earlier stage, and I bewaive it when they intervened. And not everybody intervened is my understanding. That's correct. Right. So we certainly have at least some classes of plaintiffs who have not consented by – through intervention. That's correct. Usually the way you get in REM jurisdiction, as Judge Feige said, is attachment. Like you attach a ship. Is anything attached? That's also the way that you give notice to the – to the – whoever claims the property is by seizing the property. You have a statute here. You have a provision that would allow you to do this. What's the basis for the exercise of jurisdiction the way that you conducted the lawsuit? Well, again, the two-fold answer, that this procedure, A, is authorized by Wenke, and, two, the defendant – Well, Wenke's a decision. Are we making up the rules of civil procedure there in the cases? You don't have a statute? You don't have – is this a simple Oregon long-arm jurisdiction? Are you proceeding under 15 U.S.C. 78, whatever it is, V? I don't – I can't answer that question. I'm sorry. I would – I would simply say that our theory, again, is the two-fold answer that I gave you. We've gone way over time, so I should probably bring it to an end. Actually, if we could hear from Mr. Zorro, I wouldn't mind. If he can – if he – Mr. Zorro can answer the question. I wouldn't mind having Mr. Zorro back. Let's do that. Thank you. Thank you, counsel. I think I can answer a couple of questions. First, you asked a question about right to a jury trial, and I think if you look at the Wrynn decision, that case was decided by the Ninth Circuit and found that this is in the form of injunctive relief for which there is no right to a jury trial. I think that addresses the issue of the jury trial. The issue of jurisdiction, I think, can be – is two-fold. The appellants here, each and every one of them intervened in this case. So it is correct that not every sales agent intervened, but for the purpose of this appeal, every single person who has filed and joined in this appeal intervened. And your contention is that when they intervened, that they have consented to the jurisdiction of the court. Yes, and we cited a case in our brief to that effect. I believe it's – I'm sorry, I don't have it off the top of my head, but it's cited in our brief. And there is – if you look also at Wanky, I think there's a footnote in Wanky which discusses the fact that there is no such thing as a special appearance for the purposes of appearing in a case and avoiding personal jurisdiction. No such thing as a special appearance? For the purposes of trying to avoid personal jurisdiction after you intervene. Can't intervene and then can't have it both ways. You're saying that the intervention was consent? Correct. Okay. Now, just for my intellectual curiosity – I'm sorry. There is actually a case in our brief cited to that effect also. Okay. Just for my intellectual curiosity, with respect to the other – to the salesmen who are not appellants in this case, what – what was the – what's the assertion of personal jurisdiction? The assertion of personal jurisdiction was under Bigman, and that was that if you follow the Bigman decision, which we think this case does, that there is described sort of – it fits the jurisdictional purview. There's a securities statute, Section 27, provides for nationwide service of progress, thereby conferring personal jurisdiction over the defendants in the case. But the assertion of that jurisdiction would have to be by summons and complaint. There's nothing that suggests that that's the case. In fact, I don't think that there is no reason – I don't believe that – that following Section 27, is that – Section 27, is that – is that the 15 U.S.C. side, or is that – 15 U.S.C., Section 78, AA. AA. Now, the – the issue of whether the issue was summons or not, I mean, I think it's very important to note, and this is outlined in our brief extensively, and we'll go over here, but we did do everything possible to give everyone notice. We didn't file a motion and then have a hearing 30 days later. There was a motion. There were a series of interim steps where the Court afforded the defendants not only the right to do discovery, but to respond to the motions. And even at a point where, after liability was determined, that in fact distortion should occur, there was a process by which each defendant – each of the – each of the defendants was permitted to address how much their claim should be. Is this the case – I may be mixing up two cases that we had on this calendar. There was one of them where the defendants were mailed papers right around Christmas and told they only had until immediately after New Year's to do anything about it, but then the defendants got some extensions. Well, I don't always smile because that is, in fact, the case. Although – That is this one. That is one, but I would – You say you gave them every opportunity. It's not exactly right. Let me just say – You squeeze them out of any opportunity, and then they managed to get a little grace from the Court. Can I – if you don't mind, I actually received a call from Judge Panner the day before Christmas telling me to serve these papers on these folks, and I have no idea why. We filed our papers without – and requested with a note, asked – because this was a special procedure and we didn't – a summary procedure, we actually didn't – weren't sure exactly how much time the Court wanted to give. I actually received a call from this judge on Christmas Eve day telling me to serve these papers the day after Christmas. Counsel, I'm wondering – Counsel, I – this was not – this was – Sorry for that, but it's not your fault. It's not my fault, and not only that, we intended at every point – before I ever filed this motion, I filed a motion asking for authority to file this motion. So at every step, we attempted to comply with the wanky ability to give as much due process as possible. Remember, we are a receivership, and in a receivership, we had very little – very few funds to work with here. So we were attempting to do the least expensive and afford the most due process. And I think we accomplished it. I'm sorry, I interrupted. I was just – I was going to make a comment. I was asking how difficult it is to serve a summons and complaint under the changes to Rule 4 that now, you know, allow you to serve a letter and serve the complaint and ask that service be waived, and will allow you the opportunity of recovering your costs if they decline to waive service of process and force you to serve them. Well, as a practical matter, it's extraordinarily expensive. You're talking about 165 different folks, with each one who would receive a letter and, of course – But you all served them with the motion. You already served 100 – you already sent a letter to 165 folks. I did, but I didn't have to then – I didn't have to then follow up with another letter saying, if you don't do this, then we're going to collect our costs, which, incidentally, we would never collect. I mean, if we could collect the costs, we could collect all this money, which, you know, that's a good theory, and I definitely would do it on a day-to-day basis. But for 165 people, would the attorneys be using costs in pursuing personal service on all those people and actually affecting personal service? I don't get that. I mean, expensive is always relative to something. You were going for millions of dollars here. Yes, it would be terribly expensive if you had to go through all that process for 165 people, and your total case is worth maybe $5,000. Sure. But where it's worth millions, that's the kind of case where you fly to New York for one deposition and you hire a car to take you to Hartford for another. Well, we were extremely careful in this case to make sure, because we also realized that the ability to collect money – it's easy to get a judgment. It's extraordinarily difficult to collect money from 165 people located throughout this country, which, of course, we have found since we got the judgment. It has been extremely difficult to collect from these folks. So we had to take not into account not just the cost of obtaining the judgment, but the cost and the ability to collect. So we did not want to throw a lot of money at something that we could not – we were not sure once we got that we would actually be able to collect it. So remember, we started out in a very staged process. We sent out two letters to – or three letters to these, each person saying, we think you should return this money. We asked them to return it voluntarily. We asked it three times, and that didn't work. Then we filed this motion. So we tried to do this in a very graduated sense because, again, this is an equitable receivership. We had to take into account the cost benefit of these things. There are lots of people we can sue in cases in receivership, but the ability to collect the money at the end of the day really has to drive your decision because otherwise, you know, all I'm doing is working for myself, and the investors get Zippo. So that's not what we're about. The intent of the receiver is to try and marshal the assets to the benefit of all. So I agree. These summary procedures are extremely important, and we use them in other cases, and they are – without them, the ability to marshal the assets in an effective and cost-effective manner would really be limited. Thank you, Counsel. Thank you. Thank you for this very interesting argument. He was. Ross versus. No, he is. Oh, I'm sorry. We have rebuttal. Should have brought my dancing shoes. Well, Mr. Wustos, let's start with this. Are all of the named appellants in this suit also intervenors? No. Okay. Can you tell us who is not? There's only 17. They're named on the actual. Thank you. Priscilla Ross. Mark. Kevin Rimple. Bruce Roark. Dennis Barger. Michael Gerard. Lance Lutkoski. Samar Ghosh. Robert Triplett. Richard Wilson. Carl Norris. Phil Pruitt. Thomas O'Park. Joe Blandenburg. Ernest Wustos. Well, those are the names of the people on the brief. Those are the people that are the intervenors in the actual. I have to ask you, is there anybody who's not an intervenor? Oh, I don't have that list with me, sir. I can give it to you later if you'd like. Okay. The question is relevant because counsel for the receiver has told us that all of the appellants are also intervenors. No. Well, yes. Yes, they are. Okay. And we never waived our issue over jurisdiction. Okay. Well, that may be governed. I haven't looked at the case, but that may be governed by other cases that suggest that if you've intervened, then you have consented to personal jurisdiction. We issued a special appearance. Well, I understand that. And we were advised by counsel that by issuing a special appearance, we did not give up our jurisdictional argument. I understand you may be unhappy with your counsel when all this is over, but. . . But this was before you were intervenors. I'm sorry? You got that advice about special appearance before you intervened. Isn't that correct? Yes. Then later intervened. So that advice wouldn't necessarily apply once you intervene. I think the intervening, when immediate, it was filed as an intervening motion with special appearance. Thank you. Were you represented by counsel at that time? Inadequate counsel, yes. And we have sued them in Texas. I want to make a point that no separate action was brought in the regular process. The agents were denied opportunity to discover. Mr. Zarro says that we were given discovery. I can tell you that we've had many instances with Mr. Zarro that has led us to a dead end. They've told our lawyers to go into an empty room or a room with just a bunch of boxes and no indexes. Go through the boxes, find what you can find. I can also tell you that the agents, most importantly, were denied an opportunity to file a counterclaim to offset the identification rights against Alpha and forced to litigate in Oregon. The 165 agents were scattered throughout the country. We never received a list of those agents. In fact, Mr. Zarro attempted to have our counsel sign an agreed statement saying that if they disclosed the 165 agents and their whereabouts that they wouldn't turn them over to me so I couldn't contact them. There are a lot of issues in this case. And as you well are aware that the Securities and Exchange Commission will make allegations and have no basis of law to support those allegations. All they say is we've always done it this way and because we've always done it this way, this is the way it is. The problem with that argument is that it's never been contested and we're contesting it now. And we will contest it all the way up to the Supreme Court. We believe that the receivership process is a very arbitrary process or an abusive process by where the assets are marshaled and taken for personal gain for the receivership and the attorneys. Mr. Zarro says that the most important thing is to be able to protect the investors, yet none of the payphone owners will ever receive a dime from any recovery. They have entered into agreements with the tax courts saying that they have agreed to pay them $8 million in fines for the promotion of an abusive tax plan and yet were allowed to keep $1.7 million as a tax refund. There's a lot of shenanigans going on in this case. We believe that those shenanigans must be exposed for the benefit of the people who proceed these cases. In future cases, the receivership process is an abusive process. In the last five years of my involvement in Alpha Telecom and trying to resolve the issues not only for the payphone owners themselves, we have a $170 million lawsuit against the insurance companies that Mr. Zarro and the receivers said didn't exist, yet that suit has been filed in Texas. There are mitigating circumstances here when you look at the agents and their compliance in gathering. He says that we've been given every opportunity to offset our expenses. My tax returns were fully audited by the Internal Revenue Service and not one number was changed, yet I was not given all my offset expenses towards the discouragement. There are people out there like Kevin Ripple that inherited $105,000 in payphones that Mr. Zarro and Mr. McNutt have refused to give credit for. That's in the order of the court said that there's always an opportunity for the individual agents to inherit money. Well, if it's an opportunity to inherit money, then it should be an opportunity to be able to get offsets for the money that was already inherited to them. There are a lot of issues here, Your Honors. I think that you should look at the cases the way the law was written, not give special inferences to the Securities and Exchange Commission and their tactics or the receivership process. Thank you very much. Thank you. Ross versus Alpha Telecom is submitted.
judges: D.W. Nelson, Kleinfeld, Bybee